T.C. Memo. 1999-102


UNITED STATES TAX COURT


GORDON B. COLOGNE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12298-97.                    Filed March 31, 1999.


Erla Elizabeth Arnold, for petitioner.

Christine V. Olsen, for respondent.


MEMORANDUM OPINION

COHEN, Chief Judge:  Respondent determined a deficiency in

petitioner's Federal income tax in the amount of $11,032 for the

taxable year 1994.  By amendment to the answer, respondent

asserts an increased deficiency in the amount of $14,297.  The

issue for decision is whether petitioner is entitled to deduct as

alimony certain amounts paid in accordance with a marital settlement agreement.

This case was submitted fully stipulated under Rule 122. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The stipulated facts are incorporated herein by this reference. Petitioner's brief contains statements and attachments that were not stipulated and are not evidence. See Rule 143(b). We disregard these in making our decision.

Background

Petitioner resided in La Quinta, California, at the time he filed the petition in this case. Petitioner formerly was married to Patricia R. Cologne (Ms. Cologne). Petitioner and Ms. Cologne separated on March 21, 1993. On November 19, 1993, petitioner and Ms. Cologne entered into a marital settlement agreement (the agreement), which was filed with the Superior Court of the State of California for the County of San Diego on December 29, 1993.

Pertinent portions of the agreement are as follows:

RECITALS

\* \* \* \* \* \* \*

6. Husband is presently the sole proprietor of Gordon Cologne and Associates. This business has an estimated pre-tax net income of $19,500.00 per month. Wife is presently unemployed and has no earned income. Husband will retire on or about September 1, 1994,

after reaching the age of 70, and anticipates receiving no earned income after that date.

* * * * * * *

DIVISION OF COMMUNITY PROPERTY

* * * * * * *

12. The real property commonly known as * * * Rancho Santa Fe, California, shall be disposed of according to the following terms:

A. The residence shall be listed for sale * * * on or before February 1, 1994. * * * The residence shall remain listed until sold. * * *

* * * * * * *

C. Wife may have the use and possession of the residence on the condition that she maintain the residence and yard in satisfactory condition, normal wear and tear excepted. Husband shall have the right to occupy the residence for principal residential use purposes including sleeping, cooking and eating and attending to his personal hygiene needs. In case of any dispute, Wife shall have the first right to occupy the premises. Husband shall also have the right to store any items of personal property awarded to him in the premises until the sale is consummated.

* * * * * * *

E. Until the sale of the residence is consummated or until September 1, 1994, whichever first occurs, Husband shall pay on a current basis, without the right to reimbursement, real property taxes, principal and interest payments on the notes secured by deeds of trust on the residence and fire and liability insurance for the residence. In addition, Husband shall pay on a current basis all charges for trash pickup, the water bill, and the gardener for one day a week, and pool maintenance. If the house is not sold by September 1, 1994, and the Wife continues to reside in the house, the Wife shall pay all the aforesaid taxes, principal and interest on the notes, insurance and maintenance costs as and for reasonable rental for such use or the actual fair rental value, whichever is

less.  If the sale of the residence is not consummated on or before September 1, 1994, the court shall have the jurisdiction to make further orders regarding occupancy and the payment of the mortgages, real property taxes, insurance, trash pickup, water, gardener and pool maintenance * * *.

        *        *        *        *        *        *        *

        H.    The net proceeds of sale, * * * shall be held in escrow and disbursed as follows:
        (1)  Husband shall be paid a sum equal to all payments made by him on or after April 1, 1993, on * * * [certain charge, credit card, and loan balances, except for purchases made by petitioner after April 1, 1993];
        (2)  The Wife shall be paid a sum equal to all payments made by her on or after April 1, 1993, on * * * [certain charge, credit card, and loan balances, except for purchases made by Ms. Cologne after April 1, 1993].
        (3)  Any remaining balance due on the obligations described in paragraphs (1) and (2) above shall be paid in full.
        (4)  Any balance remaining shall be paid one-half to each party and Wife shall pay to Husband from her one-half, her share of the 1993 income tax obligation as set forth in Paragraph 16.

        *        *        *        *        *        *        *

        13.  The real property in Blue River, Wisconsin, shall be disposed of according to the following terms:

        A.    The parties shall continue to hold such property as joint tenants with right of survivorship. Either party may terminate the joint tenancy at any time.  At such time both parties shall make testamentary provisions so that the property will pass to the children of this marriage if a party should die prior to its sale.

        *        *        *        *        *        *        *

C.   Both parties shall have the right of use and possession of the residence.  In case of a conflict, Wife shall have the first right to any two-week period she chooses upon providing Husband thirty days' advance written notice.

*     *     *     *     *     *     *

E.   Wife shall pay on a current basis, without the right to reimbursement, principal and interest payment on the note secured by the first deed of trust. Husband shall pay on a current basis, without the right to reimbursement, real property taxes on the residence, fire and liability insurance for the residence, utilities, maintenance and repairs.  All income received on account of the property shall be applied to the obligation owed to W. Southard and any remaining balance shall be paid one-half by each party.  Any earnings remaining after payment to W. Southard shall be divided equally between the parties.

*     *     *     *     *     *     *

15.   The Husband's interest in the Judge's Retirement Plan and in the Legislator's Retirement Plan shall be divided equally between the parties.  * * * Pending each plan's direct payment of benefits to Wife, Husband shall allow the Wife to receive for deposit in a joint account the entire retirement benefits in lieu of the division of these benefits and the spousal support as provided in paragraph 34 of this agreement. She may withdraw all such sums for her personal use as an assignment in satisfaction of spousal support.

*     *     *     *     *     *     *

16.   The parties shall file joint federal and state tax returns for the calendar year ending 1993. * * *  Any tax liability due and unpaid upon the filing of the tax return shall be paid by the Husband, and the Wife shall reimburse the Husband her share of the tax based on the net income (retirement income actually received) received by her during the year.  * * *

*     *     *     *     *     *     *

## DEBTS

\*      \*      \*      \*      \*      \*      \*

30.  Husband and Wife shall each pay fifty percent
(50%) of all liabilities and expenses (including
accounting and legal fee) relating to any tax
liabilities asserted by Federal, State or local taxing
authorities arising out of any review of the parties'
personal income tax returns for any period when they
filed joint returns except for tax year 1993 which is
governed by paragraph 16.  Each party shall, however,
be solely responsible for the liabilities and expenses
resulting from income known only to and solely
benefiting said party.

\*      \*      \*      \*      \*      \*      \*

## SPOUSAL SUPPORT

34.  Husband shall pay Wife \* \* \*, as and for
spousal support the sum of $3,000.00 per month on the
1st day of each month commencing November 1, 1993, and
continuing until Husband dies, Wife dies, Wife
remarries, Wife commences residing with an unrelated
member of the opposite sex, or until Husband retires on
September 1, 1994, whichever shall first occur.

During 1994, petitioner made the following payments pursuant

to the agreement:

| | |
|---|---|
| $25,950.00 | Spousal support |
| 1,920.00 | Life insurance premiums |
| 3,030.00 | Gardener for home during pendency of sale |
| 675.83 | Pool service |
| 1,804.02 | Waste management |
| 6,790.77 | January and February pensions |
| 1,221.54 | Utilities (electric and water conditioning) for house in Wisconsin |
| 33,625.50 | One-half of petitioner and Ms. Cologne's 1993 State and Federal income taxes. |
| $75,017.66 | |

Petitioner deducted $71,273 as alimony on his 1994 Federal income

tax return.

The parties have stipulated that an alimony deduction is allowed for the following payments totaling $36,465:  Spousal support of $25,950, life insurance premiums of $1,920, waste management of $1,804, and January and February pension payments of $6,791.  Remaining in dispute are the payments of Ms. Cologne's half of the 1993 Federal and State income taxes and payment of the utilities for the Wisconsin property.

Discussion

Section 215 allows as a deduction an amount equal to the alimony or separate maintenance payments paid during the year. For purposes of section 215, the term "alimony or separate maintenance payment" means any alimony or separate maintenance payment (as defined in section 71(b)) that is includable in the gross income of the recipient under section 71.  See sec. 215(b). Section 71(a) provides that gross income generally includes amounts received as alimony or separate maintenance payments. Section 71(b)(1) defines alimony or separate maintenance payment as any payment in cash if--

(A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,

(B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,

(C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor

spouse are not members of the same household at the time such payment is made, and

(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

California Family Code section 4337 (West 1994) provides: "Except as otherwise agreed by the parties in writing, the obligation of a party under an order for the support of the other party terminates upon the death of either party or the remarriage of the other party."

The parties dispute whether the payments at issue meet the requirement of section 71(b)(1)(D). The parties agree that the agreement does not provide any conditions for the termination of these payments. Respondent's position is that petitioner's obligations to pay Ms. Cologne's share of their 1993 income taxes and for the utilities for the Wisconsin property survive her death. Petitioner argues that petitioner's liability for the payments terminates at her death pursuant to California Family Code section 4337.

Federal and State Income Tax Payments

Because the income tax liabilities are joint and several, if Ms. Cologne died, petitioner would remain liable for the full amount of their taxes to the respective tax collectors. See sec. 6013(d)(3). Normally, however, petitioner would be entitled to the right of contribution for Ms. Cologne's half of the taxes.

Petitioner, through the agreement, has given up that right (beyond the limited share specified). The question we must decide is whether, if Ms. Cologne died, petitioner would still be obligated for Ms. Cologne's half of the joint liabilities without the right of contribution (beyond the share specified). As this question is not answered by the agreement and the payment of taxes is not the usual type of support expense, such as food, shelter, or medical care, that necessarily ends with the payee spouse's death, we look to State law.

California Family Code section 4337 (West 1994) serves to terminate spousal support at the payee spouse's death, where the parties have not otherwise agreed. California law distinguishes payments for support from those for property settlement. In setting spousal support, the California court considers, among other factors, each party's earning capacity, the needs of each party based on the standard of living during the marriage, the payor spouse's ability to pay, the obligations and assets of each party, the duration of the marriage, and the age and health of the parties. See Cal. Fam. Code sec. 4320 (West 1994).

Division 7 of the California Family Code governs the division of debts and liabilities and that of property. See Cal. Fam. Code sec. 2500-2660 (West 1994). Both assets and liabilities are considered in dividing the community estate. See Cal. Fam. Code sec. 2552 (West 1994).

The allocation of the liability for the 1993 income taxes between petitioner and Ms. Cologne was based on their relative incomes for the year. Petitioner has not shown that the allocation was based on their relative needs, standards of living, or earning capacities when the taxes would be paid or on any other factors normally taken into consideration in determining support. The agreement provided that petitioner would be reimbursed for Ms. Cologne's smaller share out of the net proceeds, if any, of the sale of the residence remaining after other debts were paid. The division of the couple's tax liabilities is in the nature of a property settlement, rather than a provision for the future support of Ms. Cologne. Accordingly, section 4337 of the California Family Code (West 1994) does not operate to terminate these payments at Ms. Cologne's death, and the requirement of section 71(b)(1)(D) is not met. Petitioner is not entitled to an alimony deduction for the payments of his former spouse's 1993 Federal and State income tax liabilities.

Payment of Utilities for Wisconsin Property

Pursuant to the agreement, petitioner and Ms. Cologne owned the Wisconsin property as joint tenants with right of survivorship. Both had the right of use and possession of the property, and his liability for utility bills would be continued after her death. While she occupied the property, however, the

utility charges related to her use of it.  We have allowed alimony deductions for utilities.  See <u>Graham v. Commissioner</u>, 79 T.C. 415 (1982); <u>Zampini v. Commissioner</u>, T.C. Memo. 1991-395. We hold that petitioner is entitled to deduct half of the amount paid, or $610.77.

To reflect the above holdings and the parties' stipulations,

<u>Decision will be entered under Rule 155</u>.